LUCY BROWN AND OTHERS v. VIRGINIA ADVENT CHRISTIAN
CONFERENCE, ET AL.

June 8, 1953.

Record No. 4071.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

*E. A. Gentry, D. M. Byrd,* for plaintiffs in error.

*R. B. Stephenson, J. W. C. Johnson,* for defendants in error.

WHITTLE, J., delivered the opinion of the court.

Plaintiffs filed a motion for judgment seeking to recover compensatory and punitive damages for the razing and destruction of a church building. The defendants were the Virginia

Advent Christian Conference, an unincorporated association, and its duly elected officers; the three trustees of Griffith Advent Church, John L. Morgan, Harvey W. Reynolds and Bernard W. Nicely, who, together with Tom Wood, deceased, had been duly appointed trustees for the church by the Circuit Court of Alleghany County.

A plea in abatement was filed challenging the right of the plaintiffs to maintain the action. A demurrer, a plea of the general issue, and grounds of defense were also filed. The demurrer was overruled and the case proceeded to trial.

At the conclusion of the plaintiffs' evidence the court sustained defendants' motion to strike, and a verdict for defendants was returned by the jury. Judgment was entered on the verdict over plaintiffs' objection and we granted a writ of error.

Plaintiffs list six assignments of error which present three questions:

(1) Did the plaintiffs have the right to maintain this action at law?

(2) Did the trial court err in striking the evidence?

(3) Should the trial court have transferred the action to the equity side of the court?

The first two questions can be treated together and in their determination it will be necessary to relate the facts surrounding the controversy.

In 1895 Andrew J. Turner conveyed a lot containing three-fourths of an acre to church trustees for a building site. The lot was in the village of Griffith, which is located in a rural mountainous section of Alleghany county. The deed to the trustees contained the following pertinent provisions:

"For the purpose of building a Church to be dedicated to the Lord in the name of the Second Adventists to whom it shall belong. But free to all Christian sects for religious worship, when not occupied by the rightful owners. Said Church shall not be sold or transferred to any other denomination. * * *"

The evidence disclosed that soon after the conveyance a modest wooden church building was erected on the site. From the date of its erection until 1942 the church was used by the Second Adventists as a place of worship, and at intervals during this period other denominations were permitted to hold religious services therein.

Prior to 1942 many citizens of the village of Griffith had

moved away, leaving only two members of the Second Adventist faith in or near the village. These were Roy Brown and Lucy Brown, his wife.

Griffith Church was inaccessible, being located across Cow Pasture river and away from improved roads, with no vehicular bridges available. In the early life of the church the river could be forded by horse-drawn vehicles but was generally too deep for motor traffic. There were two footbridges across the stream, some distance from the church.

Two other Adventist churches had been erected in the vicinity of Griffith Church, at locations easily accessible. Many members of Griffith Church became affiliated with these new churches. It was admitted that the Second Adventists had not held services in the church for nine years prior to this litigation, the last service being held in 1942.

From 1942 until September, 1948, other denominations infrequently used the church building. From September, 1948, until May, 1951, the date the church building was removed, there had been no service of any kind held in the church. The building stood uncared for and abandoned. The evidence disclosed that the roof leaked and the plaster inside was falling.

The Virginia Advent Christian Conference, holding ecclesiastical jurisdiction over Griffith Church, conferred with the church trustees and it was decided to move the building and equipment to Waynesboro. Under order of the Conference the building was razed in May, 1951, and the usable material was removed in accordance with the order.

In September, 1951, several months after the building had been razed and the material removed, a group of twenty-nine citizens gathered at the church site and participated in a religious service conducted by the Rev. A. O. Turnbow. At the conclusion of the service a business session was held at which the ground work for this litigation was laid. A resolution was adopted which read in part as follows:

"* * * At the conclusion of the services the congregation held a business meeting and elected A. O. Turnbow chairman. Then elected three trustees, Mrs. Roy A. Brown, Mr. Robert T. Willis, Mr. Arthur Morgan. The trustees were authorized and directed by a motion duly made and seconded and unanimously carried. To investigate the destruction of the church building

and to take such actions in connection therewith as may appear adviseable.''

The evidence disclosed that many of the twenty-nine persons at the meeting were children, and the great majority of those present were not members of the Adventist faith. In fact, Roy Brown and his wife, Lucy Brown, were shown to be the only members of this denomination present who were members of Griffith Church.

Arthur Morgan, one of the plaintiffs, while claiming to be a member of Griffith Advent Church, had not attended services there for years. He had not lived in the vicinity of the church for ten years, and at the time of this suit he lived near Clifton Forge, some nine miles distant. Lucy Brown, another plaintiff, formerly a member of the Christian denomination, claimed membership in Griffith Church but had not attended Adventist services there since 1942. The third plaintiff, Robert T. Willis, was a member of the Christian denomination and had never claimed to be a member of the Adventist faith.

The three defendant trustees held the title to the church property, and the deed to the land contemplated that the ''rightful owners'' were the members of the religious congregation of Griffith Second Advent Church, it being provided that ''said church shall not be sold or transferred to any other denomination.'' Thus the members of the religious congregation of Griffith Advent Church were the *cestuis que trustent* under the deed and not the members of other denominations who were permitted to worship in the church ''when not occupied by the rightful owners''. *Hoskinson & al.* v. *Pusey, & al.*, 32 Gratt. (73 Va.) 428, 431, 432.

No attempt was made to prove the membership of the congregation. Mr. and Mrs. Brown and Arthur Morgan were the only members of the Adventist faith mentioned, and it was neither alleged nor proven that they constituted the congregation of Griffith Advent Church.

Plaintiffs suggest in their brief that section 8-66 of the Code of 1950 gives them the right to maintain this action. This section provides that ''All unincorporated associations or orders may sue and be sued under the name by which they are commonly known and called, or under which they do business, * * *''. Clearly, this section contemplates that litigation brought pursuant thereto will be instituted by the officers of such unin-

corporated association or order who have charge of its affairs or by members of the association or order who have been legally authorized to proceed with the litigation.

In the instant case, however, the action was instituted in the names of the three plaintiffs and not in the name of the "association or order" as is contemplated by the statute, and their authorization to bring the action emanated from a source having no established property right in the subject matter. While we do not condone the destruction of this church building, under the related circumstances the court correctly ruled that the plaintiffs could not maintain this action at law, and the motion to strike the evidence was properly sustained.

Pending the court's ruling on the motion to strike the evidence, the plaintiffs suggested that the case be transferred to the equity side of the court. A bill in equity embodying the allegations in the motion for judgment was presented and the court was requested to permit same to be filed. The bill sought compensatory and punitive damages as did the motion for judgment. In truth, it presented an action in tort. Under the circumstances, the trial court properly refused to permit it to be filed. *French* v. *Stange Mining Co.*, 133 Va. 602, 631, 632, 114 S. E. 121.

As stated by the trial judge in his written opinion, the church trustees failed "to comply with the statutory provisions (§ 57-15, Code, 1950) * * * in removing the church building from the lot, * * *". The trustees should have secured an order from the court as provided by the statute before thus disposing of the property. But their failure to secure such an order does not give these plaintiffs, selected as they were, the right to maintain this action in tort.

The order of the trial court dismissing the tort action expressly provided that the same was dismissed "* * * without prejudice to the plaintiffs to proceed in equity * * *" if so advised. See *Perkins* v. *Seigfried,* 97 Va. 444, 34 S. E. 64.

For the reasons stated, the judgment is

*Affirmed.*